

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**01/16/2013**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 12-32312** |
| **THOMAS C SCHOOLER** | § | **CHAPTER 7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **AMERICAN K-9 DETECTION SERVICES,** | § | |
| **LLC** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 12-03300** |
| | § | |
| **THOMAS C SCHOOLER** | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Defendant Thomas Schooler's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 25), is granted in part and denied in part. The Motion is granted with respect to (i) the claim under 11 U.S.C. § 523(a)(2)(A) against Mr. Schooler as the alter ego of Indian Creek Enterprises, Inc. d/b/a Animal Port Houston ("APH"); and (ii) the claim under 11 U.S.C. §§ 727(a)(2)(A) regarding the transfer of real property in Burton, Texas. The Motion is denied with respect to (i) the claim under 11 U.S.C. § 523(a)(2)(A) against Mr. School for his alleged individual torts; (ii) the claims under 11 U.S.C. § 727(a)(2)(A) regarding the liquidation of antiques and the APH asset transfer; and (iii) the claims under 11 U.S.C. § 727(a)(4)(A).

## Background

## Death of Canines

American K-9 Detection Services, LLC ("American K-9") provides canine detection and security services to public and private entities worldwide. (ECF No. 22 at 3-4). APH engaged in animal transport and kenneling services, maintaining a transit station near Bush Intercontinental Airport ("Intercontinental"). (ECF No. 22 at 4). The Debtor, Thomas Schooler, is the founder, President and sole shareholder of APH. (ECF No. 22 at 4). American K-9 alleges that Mr. Schooler unilaterally directed all business activities and operations of APH. (ECF No. 22 at 9).

American K-9 had a contract with the United States government to provide canine/handler teams to support U.S. military operations in Afghanistan in November and December 2010. (ECF No. 22 at 5). Hill Country Dog Center ("Hill Country"), which trained canines as agent of American K-9, entered into an agreement with APH. (ECF No. 22 at 5). Pursuant to the agreement, APH would assist with the process of manifesting fourteen canines ("Canines") on a Royal Dutch Airlines ("KLM") international cargo flight bound for Afghanistan that departed Intercontinental on December 20, 2010. (ECF No. 22 at 5).

At the time of the agreement APH advertised via its company website (www.pettransport.com) that: (1) it specialized in "safe and gentle animal shipping;" (2) operated a "24-hour luxury pet hotel and animal station;" and (3) was a bonded and insured boarding facility. (ECF No. 22 at 4).

Each of the Canines had been examined by a licensed veterinarian and officially certified as fit for travel less than one week prior to December 20. (ECF No. 22 at 6). On December 20, Hill Country employee Jason Dill transported the Canines to APH's office. (ECF No. 22 at 5). Dill confirmed that each of the Canines was alive and in good health. (ECF No. 22 at 6). At

APH's office Dill met with Christopher Hay, the manager of APH's transport and kenneling operations.  (ECF No. 22 at 5).  Thereafter Dill traveled with the Canines to KLM's receiving terminal.  (ECF No. 22 at 5).  At the terminal the Canines, who were crated in transport kennels, were placed on transport pallets and prepared for air travel.  (ECF No. 22 at 6).

Later that afternoon Hill Country received a call from APH that the Canines were unable to board the originally scheduled flight, and could likely be re-manifested on the first KLM flight the following day.  (ECF No. 22 at 6).  Hay informed Hill Country that APH did not have enough open kennels for all of the Canines but would board as many as possible, leaving the rest of the Canines inside their transport kennels in APH's warehouse.  (ECF No. 22 at 6).  Instead, APH left all of the Canines overnight in the poorly ventilated, tightly sealed truck that APH used to transport the Canines back from KLM.  (ECF No. 22 at 6).  On the morning of December 21, 2010, Dill and American K-9 trainer Justin Rutherford found the Canines dead in the truck. (ECF No. 22 at 7).  Hay admitted that he found the Canines dead inside the truck earlier that morning.  (ECF No. 22 at 7).  He admitted that he left the Canines in the truck overnight, with Mr. Schooler's approval and knowledge.  (ECF No. 22 at 7).  Hay later made a statement to American K-9 that the Canines were alive and well the evening of December 20. (ECF No. 22 at 7).

Both Mr. Schooler and Mr. Hay acknowledged having left animals overnight in transport trucks in the past.  (ECF No. 22 at 7).  There was a prior incident where laboratory mice perished after being left unattended in a sealed APH transport truck.  (ECF No. 22 at 7).  After the death of the mice, APH was notified that it needed an alarm detection system in its trucks to detect temperature changes within the transport cabin; and or backup cooling units.  (ECF No. 22 at 7). Either mechanism would have prevented the Canines' deaths.  (ECF No. 22 at 7).

After the incident American K-9 learned that APH did not have insurance to cover the losses from the Canines' deaths.   (ECF No. 22 at 8).   APH's commercial liability policies expressly exclude coverage for damage arising from: (1) "personal property in [APH's] care, custody or control of [APH's] employees; (2) loss to live animals caused by [APH];…(4) property damage to any…property being transported by…or in the care, custody or control of an insured."  (ECF No. 22 at 8).  APH has ceased all business operations and no longer has assets to satisfy corporate debts.  (ECF No. 22 at 9).  American K-9 alleges losses of not less than $1.3 million.  (ECF No. 22 at 9).  American K-9 informed Mr. Schooler via letters in January and May 2011 that it intended to pursue claims resulting from the Canines' deaths. (ECF No. 22 at 10).

## Asset Transfers

On March 28, 2011, Mr. Schooler transferred real property and improvements at 12607 West Washington Street, Burton, Texas (the "Real Property") to Dr. James Gray.[1] (ECF No. 22 at 10; ECF No. 1 at 28).   In his Motion to Dismiss, Mr. Schooler alleges that the sale of the Real Property was contemplated in June 2010, prior to the December 2010 incident, but was not effectuated until after the incident.  (ECF No. 25 at 11).  The transferred property included a restaurant and pub doing business as the Pig & Whistle Pub ("Pig & Whistle"),[2] and a warehouse adjoining the Pig & Whistle.  American K-9 alleges that the warehouse contained valuable antiques and collectibles owned by Mr. Schooler that were allegedly liquidated in mid-2011.  (ECF No. 22 at 10).  Mr. Schooler's Statement of Financial Affairs ("SOFA") shows that

---

[1]  Dr. Gray and Mr. Schooler live in the same home.   Mr. Schooler acknowledges Dr. Gray as a friend (ECF No. 22 at 10).   Mr. Schooler has at times represented Dr. Gray to be his cousin, but denied any family relationship with Dr. Gray at his 341 meeting.  (ECF No. 22 at 10, n3).

[2]  The Pig & Whistle is operated by Tom's Fiddlestick LLC, of which Mr. Schooler is the sole shareholder. (ECF No. 22 at 10).

he received $60,000.00 for the transfer of the Real Property.  (ECF No. 22 at 10).  American K-9 alleges that the Burton County tax rolls value the property at $128,860.00. (ECF No. 22 at 10, n4).  At Mr. Schooler's 341 Meeting he testified that the consideration for the transfer was actually prior undocumented loans from Dr. Gray.  (ECF No. 22 at 10).  A former employee of the Pig & Whistle, Jennifer Duren, informed American K-9 that the Real Property was conveyed for no consideration, and was conveyed without Dr. Gray's knowledge. (ECF No. 22 at 10).  Although Mr. Schooler remains the effective owner/operator of the Pig & Whistle, he has not disclosed any income from the operation.  (ECF No. 22 at 11).  Mr. Schooler maintains that he does not receive any income from operation of the Pig & Whistle. (ECF No. 25 at 12).  In July 2011, Mr. Schooler transferred all of APH's assets to Life Animal Transportation Services, LLC, which was founded by Mr. Schooler's former employee, Mr. Hay. (ECF No. 22 at 11).  American K-9 alleges that the transfer was for less than the value of the assets.  (ECF No. 22 at 11).  Mr. Schooler's SOFA lists $20,000.00 as the consideration for the sale of APH's assets.   APH has ceased all business operations and has no assets. (ECF No. 22 at 11).  At his 341 Meeting, Mr. Schooler testified that he sold APH's assets to Mr. Hay not in an attempt to avoid American K-9's claims, but because he was aging and wanted to get out of the business.  (ECF No. 25 at 13).

**Procedural Background**

On March 29, 2012, Mr. Schooler filed his voluntary chapter 7 petition.  (Case No. 12-32312, ECF No. 1).   On the same date APH also filed a voluntary chapter 7 petition. (Case No. 12-32311, ECF No. 1).  Both Mr. Schooler's and APH's bankruptcy schedules list the same debts, in the same amounts, in the same priority.  (ECF No. 22 at 9).  American K-9 alleges that APH's chapter 7 filing and schedules prove that Mr. Schooler allowed APH to operate with

inadequate capital for the type of business it was operating.  (ECF No. 22 at 9).  Prior to the bankruptcy filings, American K-9 sued Mr. Schooler individually and as the alter ego of APH in Texas state court for damages arising from the deaths of the Canines.   (ECF No. 22 at 3). American K-9 filed this adversary proceeding on July 9, 2012.  (ECF No. 1).  Mr. Schooler filed his Motion to Dismiss (ECF No. 8) and Answer (ECF No. 10) on August 10, 2012.   On September 25, 2012, the Court granted American K-9's Unopposed Motion for Leave to File Amended Complaint.  (ECF No. 21).   American K-9 filed its First Amended Complaint on September 25, 2012.  (ECF No. 22).  Mr. Schooler again filed a Motion to Dismiss on October 10, 2012.   (ECF No. 25).   American K-9 filed its Response on November 15, 2012. (ECF No. 32).   Vinson & Elkins, LLP's Emergency Motion to Withdraw as Counsel for American K-9 was granted on December 17, 2012.  (ECF No. 37).  On January 11, 2013, Craig H. Cavalier filed a Notice of Appearance and Substitution as Counsel of Record, as counsel for American K-9.  (ECF No. 39).

## Analysis

### A.   Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal,* the

Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.  Fed. R. Civ. P. 9(b).  *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court.  Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012(b).  Under Rule 56, summary judgment is appropriate where

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented.  *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

**B.    11 U.S.C. § 523**

### *a.      Piercing the Corporate Veil/Alter Ego*

"The corporate form normally insulates shareholders, officers and directors from personal liability for corporate obligations."  *Endsley Electric, Inc. v. Altech, Inc.*, 378 S.W.3d 15, 22 (Tex. App.—Texarkana 2012).  "Piercing the corporate veil is possible when the corporate form has been used as an alter ego of another person or corporation or if it has been used to perpetrate fraud, evade an existing obligation, create a monopoly, circumvent a statute, protect a crime, or justify wrong."  *Id*. at 23.  Statutorily there is a more stringent standard for piercing the corporate veil in contract actions.  *Id*.  To hold a shareholder personally liable for a contractual obligation a party must show that the shareholder caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud for the shareholder's direct personal benefit.  *Id*.

Alter ego is one of several theories which can be used to pierce the corporate veil.  *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 458 (Tex. App—Dallas 2012).  Alter ego should be applied if there is unity between the corporation and an individual to the extent that it would be unjust to hold only the corporation liable.  *Id*.  Factors a court may consider as proof of alter ego include: (1) payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) diversion of company profits to the individual for personal use; (4) inadequate

capitalization; and (5) other failure to keep corporate and personal assets separate.  *Id*.  There must be something more than mere unity of financial interest, ownership, and control for a court to treat an individual as a corporation's alter ego.  *Endsley*, 378 S.W.3d at 24.

Accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs, the Court finds that American K-9 has not stated a plausible claim for relief under § 523(a)(2)(A).  American K-9 alleges that its debt should be excepted from discharge under § 523(a)(2)(A) which provides that, "a discharge…does not discharge an individual debtor from any debt for money, [or] property…to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

American K-9 claims that Mr. Schooler, as alter ego of APH induced American K-9 to hire APH by false pretenses, false representations, and/or actual fraud.  American K-9 provides the following proof that Mr. Schooler is the alter ego of APH: (1) Schooler as the founder, President and sole shareholder of APH unilaterally directed all business activities to such a degree that APH was not separate from Mr. Schooler individually; (2) the contemporaneous bankruptcy filings of Mr. Schooler and APH, list the same debts, in the same amount, and the same priority; and (3) APH was undercapitalized and no longer has assets from which to satisfy its debts.

American K-9 is unable to meet its burden for piercing the corporate veil, and therefore American K-9's § 523 claim will be dismissed.  American K-9 does not allege any facts to suggest that Mr. Schooler caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud for his direct personal benefit.

The only alter ego factor that American K-9 alleges is that APH was undercapitalized.  It relies on APH's filing of bankruptcy and the fact that is has ceased doing business to prove that it was undercapitalized.   American K-9 provides no evidence of the level of capital APH was operating at versus what an appropriate level of capital would have been.  Mr. Schooler's SOFA lists $20,000.00 as the consideration for the sale of APH's assets.   (Case No. 12-32312, ECF. No. 1 at 25).   This is the only fact presented by either party that is useful to determining whether APH was properly capitalized, and is alone insufficient.   American K-9 presented no evidence that there was commingling of property or that APH was used for Mr. Schooler's personal use.  American K-9 has failed to prove any of the alter ego factors.

American K-9 argues that Mr. Schooler was the founder, President and sole shareholder and unilaterally controlled APH's operations.  These facts suggest nothing more than unity of financial interest, ownership and control—this alone is not sufficient to support an alter ego theory.

### b.    *Leave to Amend*

Generally, leave to amend should be freely granted when justice so requires.  *Garcia v. Unit Drilling Co.*, 396 Fed. Appx. 133, 136.  Leave to amend is liberally granted unless the movant has acted in bad faith, granting the motion would cause prejudice, or amendment would be futile.  *Id*.  In this case, granting leave to amend would be futile as American K-9 has already amended its complaint once and was still unable to support a veil piercing claim.

### c.    Mr. Schooler, Individually

Under Texas law a corporate officer is primarily liable for his own torts[3] and fraudulent acts.  *See Doane v. Cooke*, 2008 WL 4899169, at *4 (Tex. App.—Austin Nov. 14, 2008); *see also Duval County Ranch Co. v. Wooldrige*, 674 S.W.2d 332, 337 (Tex. App.—Austin 1984).

American K-9's § 523 claim will not be dismissed against Mr. Schooler in his individual capacity as American K-9 has pled sufficient facts to allow a trial on whether Mr. Schooler acted fraudulently.  American K-9 asserts that Mr. Schooler was the founder, President and sole shareholder of APH and unilaterally directed all of APH's business activities.  American K-9 asserts that Mr. Schooler was responsible for maintaining the website www.pettransport.com and was responsible for its misleading content which indicated that APH: (1) specialized in "safe and gentle animal shipping;" (2) operated a "24-hour luxury pet hotel and animal station;" and (3) was a bonded and insured boarding facility.

American K-9's allegations adequately plead fraud against Mr. Schooler under Rule 9(b).  American K-9 identified the misleading information on APH's website as the intended fraudulent statement.  American K-9 identified Mr. Schooler as the speaker and alleged that he maintained the website and was responsible for its content.  American K-9 identified when and where the statements were made—on APH's website at the time the contract with Hill Country was formed.  Lastly, American K-9 explained why the statements were fraudulent in that they were untrue statements that induced the formation of the contract between APH and Hill Country.

---

[3] American K-9 may have a common law negligence claim against Mr. Schooler as an individual.  After the death of the mice APH was notified that it needed an alarm detection system in its trucks to detect temperature changes within the transport cabin; and or backup cooling units.  Mr. Schooler was aware that it was not reasonable to leave the Canines in the truck overnight.  His approval and knowledge of the fact that Mr. Hay left the Canines in the truck may constitute negligence.  Should American K-9 prevail on its claims under § 727 (discussed *infra*), it would be entitled to full satisfaction of a hypothetical negligence judgment.

**C.      11 U.S.C. § 727(a)(2)(A)**

American K-9 has pled facts sufficient to support a cause of action against Mr. Schooler under § 727(a)(2)(A) regarding the liquidation of the antiques and the sale of APH's assets. American K-9 does not have a § 727(a)(2)(A) regarding the transfer of the Real Property.

To establish that discharge should be denied under § 727(a)(2)(A) the plaintiff must show: (1) a transfer or concealment of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; and (4) done with intent to hinder, delay or defraud a creditor or officer of the estate.  *Laughlin v. Nouveau Body and Tan, LLC (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010).

The Fifth Circuit has adopted a six-factor test to evaluate evidence of actual intent to defraud under § 727(a)(2)(A): (1) "the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry."  *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 698 (5th Cir. 2009).

### a.      The Real Property

Mr. Schooler filed bankruptcy on March 29, 2012.  The transfer of the Real Property allegedly took place on March 28, 2011, one year and one day before the bankruptcy filing. Based on these facts the requirements that the transfer be of real property belonging to the debtor within one year of filing bankruptcy are not met.  The Trustee may have the ability to avoid the

transfer under 11 U.S.C. § 544(a).  However, the § 727(a)(2)(A) claim with respect to the real property must be dismissed.

b.    **Antiques**

American K-9 also alleges that Mr. Schooler was the owner of valuable antiques stored in a warehouse adjoining the Pig & Whistle.  Based on information from Ms. Duren, American K-9 alleges that Mr. Schooler liquidated all of the valuable antiques in mid-2011. (ECF No. 22 at 11).  The exact date of the alleged transfer is not pled, rather American K-9 asserts that it occurred in mid-2011.  While mid-2011 is vague, it could plausibly mean a date after March 29, 2011.  Mr. Schooler does not list these antiques or their sale in his Schedules. (ECF No. 22 at 11).  Mr. Schooler alleges that Ms. Duren is not a credible source of information because of her negative feelings towards Mr. Schooler.[4]  On a motion to dismiss, credibility determinations should be viewed in the light most favorable to the non-moving party. *Combs v. Central Texas Annual Conference of United Methodist Church*, 173 F.3d 343, 344 (5th Cir. 1999).  Under this standard, Ms. Duren's account will be accepted as credible for motion to dismiss purposes.  American K-9 alleges that the liquidation of assets occurred within one year of the filing.  Regarding Mr. Schooler's intent, there is no evidence of consideration received for the assets, who the assets were transferred to or if Mr. Schooler retained any benefit.  Mr. Schooler was presumably in financial trouble both before and after the transaction.  He was aware at this time that American K-9 planned to take legal action against him for the death of the Canines since they notified him as such in January 2011.  Mr. Schooler also allegedly liquidated other assets, the Real Property and business assets, after the death of the Canines.  Lastly, the transfer of assets occurred after the death of the Canines, suggesting that the transfer was induced

---

[4] Mr. Schooler previously prevailed in a legal proceeding against Ms. Duren whereby she was required to pay his costs, and return a piece of antique furniture belonging to Dr. Gray that she had stolen under the mistaken belief that the furniture belonged to Mr. Schooler.  (ECF No. 25 and 12-13).

by the incident.   Although the alleged transfer of the antiques is not pled with the same specificity as the transfer of the Real Property, it is sufficient to withstand dismissal.  Accepting as true that Mr. Schooler liquidated valuable antiques in mid-2011, American K-9 has a viable cause of action under § 727(a)(2)(A).

>        *c.       APH Assets*

Mr. Schooler transferred the assets of APH to Mr. Hay in July 2011, within one year of filing his petition.  His SOFA lists $20,000.00 as the consideration for the sale of APH's assets. There has been no determination of the fair value of the assets, but American K-9 does allege that they were undervalued.  Mr. Hay and Mr. Schooler have a close associate relationship as Mr. Hay is Mr. Schooler's former employee.   There is no evidence that Mr. Schooler has retained any benefit in APH's assets.  Factors four through six discussed *supra* are also applicable to the analysis of the APH asset transfer.   Regarding APH assets, American K-9's pleadings are sufficient to withstand dismissal.

**D.       11. U.S.C. § 727(a)(4)**

American K-9 has also plead sufficient facts to withstand dismissal on its § 727(a)(4) claim.

To prevail under a § 727(a)(4) claim the plaintiff must prove by a preponderance of the evidence "that (1) the debtor made a ... statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *Cadle Co.*, 562 F.3d at 695.

Fraudulent intent can be proved with circumstantial evidence.  *Id.*  False statements when taken together may be evidence of reckless disregard for the truth which is sufficient for proving fraudulent intent.   *Id.*   A debtor's false statements in schedules or during proceedings are

sufficient basis for denial of discharge. *Id*. Materiality of an omission is not determined merely on the value of the omitted item or on whether the omission was detrimental to creditors. *Id*. The omission is material if it bears a relationship to the bankrupt's business transaction or estate; or concerns the discovery of assets, business dealings, or existence and disposition of a debtor's property. *Id*.

      *a.*     ***Real Property***

American K-9 asserts that Mr. Schooler made fraudulent representations both in his schedules and in statements at his 341 Meeting. (ECF No. 22 at 12). Specifically, American K-9 alleges that Mr. Schooler made false representations regarding the circumstances surrounding the transfer of the Real Property, and his ownership interest of the antiques and collectibles. Mr. Schooler lists the consideration for the transfer of the Real Property as $60,000.00 in his schedules, but testified at his 341 Meeting that the consideration was satisfaction of prior, undocumented loans. Ms. Duren also informed American K-9 that the transfer of the Real Property was made for no consideration and that Dr. Gray was unaware that the property had been transferred to him. Relying on circumstantial evidence, American K-9 has pled facts sufficient to infer fraudulent intent. Mr. Schooler's differing accounts regarding the amount of consideration given for the Real Property support a finding that Mr. Schooler has not been forthcoming regarding the details of the transfer. Additionally Mr. Schooler claims the sale was contemplated before the death of the Canines, however it was not effectuated until after their death, suggesting a motive or intent to transfer the property. The allegedly fraudulent statements, if true, are detrimental to creditors. Moreover they bear a relationship to the estate because if the transfer was in fact fraudulent, the Real Property should be recovered for the benefit of the estate's creditors.

15 / 16

**b.     *Antiques***

Mr. Schooler claims to have no ownership interest in the antiques that were allegedly liquidated.   However accepting the well pleaded facts as true, the Court assumes that Mr. Schooler did in fact own the antiques and liquidated them.   Mr. Schooler has failed to list the antiques or their sale on his schedules.   This failure, if proven, amounts to a false statement under oath.   The fraudulent intent can be inferred from the concealment of the ownership and sale because such concealment is detrimental to the estate's creditors.   The concealment of the sale of antiques also concerns discovery of assets and existence and disposition of Mr. Schooler's property.   For these reasons, American K-9 has pled facts to support a claim under § 727(a)(4).

**Conclusion**

The Court will enter an order consistent with this memorandum opinion.

SIGNED **<u>January 16, 2013.</u>**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE
